J-S74022-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| WILLIAM FRANCIS SMITHSON, | : | |
| Appellant | : | No. 578 EDA 2014 |

Appeal from the PCRA Order January 15, 2014,
Court of Common Pleas, Delaware County,
Criminal Division at No. CP-23-CR-0006454-2006

BEFORE:  BENDER, P.J.E, DONOHUE and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED DECEMBER 22, 2014**

William Francis Smithson ("Smithson") appeals from the order entered on January 15, 2014 by the Court of Common Pleas of Delaware County, Criminal Division, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Appointed counsel has filed a "no-merit" letter and requested leave to withdraw from representation pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).  After careful review, we affirm the PCRA court's order and grant counsel's petition to withdraw.

Because Smithson seeks to raise only ineffective assistance of counsel claims in this appeal, a detailed recitation of the facts underlying his

*Retired Senior Judge assigned to the Superior Court.

convictions is unnecessary. The PCRA court provided the following brief overview of the factual history of this case:

> Jason Shephard [("Shephard")], a young [23-year-old] from Cavalier, North Dakota, and a student at Northern State University in Aberdeen, South Dakota … was in the middle of a [six]-month internship at Daktronics and as a part of this internship, he was required to travel to Pennsylvania. It was in Pennsylvania where the tragic events of his death occurred. In August and again in September of 2006, [Shephard] drove from South Dakota to the suburbs of Philadelphia with a trailer, carrying Daktronics equipment for prospective sales and service at the Daktronics, Edgmont, Delaware County, Pennsylvania office. Daktronics is a South Dakota based sports scoreboard manufacturer, with a sales office in Edgmont, Delaware County.
>
> On a September night in 2006, following a business dinner and a co-worker's invitation to his house, … [Shephard] was lured to [a] party by [Smithson,] who drugged, kidnapped, assaulted, nearly raped and strangled him to death … . After [Shephard] was tragically cut down in the prime of his life, [Smithson] tampered with physical evidence, abused [Shephard]'s corpse and spent nearly three days lying to his coworkers, hotel staff, and the police.

PCRA Court Opinion, 3/25/14, at 7.

On September 21, 2006, police arrested Smithson in connection with Shephard's murder. On November 17, 2008, Smithson's jury trial began. G. Guy Smith, Esquire ("Trial Counsel") represented Smithson at his trial. Following the four-day trial, the jury found Smithson guilty of murder of the

first degree,[1] aggravated assault,[2] attempted rape,[3] kidnapping,[4] unauthorized administration of intoxicant,[5] tampering with or fabricating physical evidence,[6] abuse of corpse,[7] knowingly or intentionally possessing a controlled substance,[8] and the use of, or possession with intent to use, drug paraphernalia.[9] On January 30, 2009, the trial court sentenced Smithson to life in prison without parole. The PCRA court summarized the remaining procedural history of this case as follows:

> Following the [s]entencing, [Smithson] informed this [c]ourt that he was without resources to retain an attorney for the purposes of filing and litigating [post-sentence] [m]otions and/or an [a]ppeal; therefore, on February 4, 2009, this [c]ourt [o]rdered the Office of the Public Defender of Delaware County to represent [Smithson] for his [post-trial] [m]otions and/or [a]ppeal. On February 27, 2009, [Smithson] filed a timely Notice of Appeal to the Superior Court. On March 3, 2009, this [c]ourt sent to Appellate Counsel an Order to file a

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] 18 Pa.C.S.A. §§ 901, 3121(a)(1).

[4] 18 Pa.C.S.A. § 2901.

[5] 18 Pa.C.S.A. § 2714.

[6] 18 Pa.C.S.A. § 4910.

[7] 18 Pa.C.S.A. § 5510.

[8] 35 P.S. § 780-113(16).

[9] 35 P.S. § 780-113(32).

"Concise Statement of the Matters Complained of on Appeal," pursuant to Pa.R.A.P. 1925(b).

\*     \*     \*

The Pennsylvania Superior Court affirmed this [c]ourt's judgment of sentence by Order and memorandum dated December 17, 2009. (Pa. Super. Ct. Dkt. No. 696 EDA 2009). Thereafter, [Smithson] sought a grant of Allowance of Appeal from the Pennsylvania Supreme Court, which was denied by per curiam order dated January 13, 2011. (Pa. Supreme Ct. Dkt. No. 37 MAL 2010).

On November 3, 2011, [Smithson] filed a timely pro se PCRA petition and memorandum of law. On November 17, 2011, this [c]ourt appointed Stephen Molineux, Esquire to assist [Smithson] with respect to his pending PCRA litigation. After reviewing the case, Mr. Molineux determined that [Smithson]'s claims were meritless and on March 5, 2012, Mr. Molineux filed a no-merit letter in which he articulated why [Smithson]'s claims lacked arguable merit. [Smithson] then requested permission to proceed pro se but subsequently sought new court appointed counsel. This [c]ourt subsequently appointed Henry DiBenedetto-Forrest, Esquire, to serve as PCRA counsel. Mr. Forrest was granted multiple continuances prior to the evidentiary hearing in order to file an amended PCRA petition.

On September 10, 2013, this [c]ourt held the PCRA Hearing.

\*     \*     \*

Following the Hearing on the PCRA, wherein [Trial Counsel] was the sole witness, this [c]ourt requested Memoranda of Law and Proposed Findings of Fact and Conclusions of Law from both [c]ounsels. On January 14, 2014, this [c]ourt issued an Order [d]enying the PCRA Petition. On February 12, 2014, [Smithson] filed his timely [a]ppeal and on the same

day[,] this [c]ourt requested a Concise Statement of Matters Complained of on Appeal. [Smithson] filed a timely Concise Statement of Matters Complained of on Appeal on March 5, 2014. [Smithson]'s Concise Statement raises the same six issues that [he] raised in [his] PCRA Petition and at the PCRA Hearing.

*Id.* at 3-7.

On appeal, Smithson seeks to raise the following six issues for our review and determination:

1. Whether [Trial Counsel] rendered ineffective assistance of counsel, as guaranteed by the United States and Pennsylvania Constitutions, by virtue of counsel's alleged failure to conduct any serious investigation of Fen Bruce Covington, the other person who was present at [Smithson]'s residence when the victim was killed, relative to his role in the homicide, which ineffectiveness on the part of counsel "so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place?"

2. Whether [Trial Counsel] rendered ineffective assistance of counsel, as guaranteed by the United States and Pennsylvania Constitutions, by virtue of counsel's alleged failure to object to the testimony of Dr. Cohn, whose hearsay testimony allowed the improper admission of Exhibit C-20 at trial, the lab report from Drug Scan which indicated the presence of GHB in the victim's blood, which ineffectiveness on the part of counsel "so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place?"

3. Whether [Trial Counsel] rendered ineffective assistance of counsel, as guaranteed by the United States and Pennsylvania Constitutions,

by virtue of counsel's alleged failure to object to the testimony of John Picciano, a forensic scientist, as to the findings, examination and conclusions presented by Jennifer Badger, a serologist, whose report [Exhibit C-26 at trial] was admitted without her being available for cross-examination, which ineffectiveness on the part of counsel "so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place?"

4. Whether [Trial Counsel] rendered ineffective assistance of counsel, as guaranteed by the United States and Pennsylvania Constitutions, by virtue of counsel's alleged error to allow the hearsay statements of Covington to be read into the record by the [Commonwealth]'s lead investigator, Detective McCunney, resulting in alleged improper hearsay, which ineffectiveness on the part of counsel "so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place?"

5. Whether [Trial Counsel] rendered ineffective assistance of counsel, as guaranteed by the United States and Pennsylvania Constitutions, by virtue of counsel's alleged error to allow the hearsay statements of Jennifer Smithson to be read into the record, resulting in alleged improper hearsay, which ineffectiveness on the part of counsel "so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place?"

6. Whether [Trial Counsel] rendered ineffective assistance of counsel, as guaranteed by the United States and Pennsylvania Constitutions, by virtue of counsel's alleged failure to investigate and cross-examine Daniel Hall, a material witness for [the] Commonwealth, to

demonstrate that his statements to law enforcement were incorrect because of his excessive use of crystal meth at or around the time of his observations and communications with [Smithson], which ineffectiveness on the part of counsel "so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place?"

*Turner*/*Finley* Brief at 5-6.

Before we address the merits of this appeal, we must determine whether counsel's filing meets the requirements of *Turner*/*Finley*. Compliance with *Turner*/*Finley* procedure requires the following:

> [PCRA] counsel must … submit a "no-merit" letter to the trial court, or brief on appeal to this Court, [1] detailing the nature and extent of counsel's diligent review of the case, [2] listing the issues which the petitioner wants to have reviewed, [3] explaining why and how those issues lack merit, and [4] requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed pro se or by new counsel.
>
> If counsel fails to satisfy the foregoing technical prerequisites of *Turner*/*Finley*, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper *Turner*/*Finley* request or an advocate's brief.
>
> However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of *Turner*/*Finley*, the [court] must then conduct its

> own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007) (internal citations omitted).

Here, PCRA counsel filed a "no-merit" letter with this Court that detailed the nature and extent of his diligent review of the case, *Turner*/*Finley* Brief at 1-4, listed the issues that Smithson wants to have reviewed, *Id.* at 5-6, explained why and how those issues lack merit, *Id.* at 6-19, and requested permission to withdraw, Application to Withdraw Appearance, 8/26/14, at 1-2. PCRA counsel also sent Smithson a copy of the "no-merit" letter, a copy of PCRA counsel's petition to withdraw, and a statement advising Smithson of the right to proceed pro se or by new counsel. Thus, the record reflects that PCRA counsel has submitted a petition and "no-merit" letter that satisfy the technical demands of *Turner*/*Finley*. We will therefore conduct our own review of the merits of the case.[10]

---

[10] On September 3, 2014, Smithson filed a response to PCRA counsel's *Turner*/*Finley* letter wherein he lambastes PCRA counsel's decision to file a *Turner*/*Finley* letter and PCRA counsel's stewardship of the case. *See* Objection by Appellant to Counsel Filing an Application to Withdraw Appearance and No Merit Letter, 9/3/14, at 1-3. Smithson asserts that PCRA counsel is ineffective for filing a "no-merit" letter and that if he desired to withdraw, he should have done so before the PCRA court. *Id.* at 2-3. Smithson also contends that there are meritorious Confrontation Clause issues present in this case. *Id.* at 3. We will address the Confrontation

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.* "Further, we afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (quotations omitted), *appeal denied*, 93 A.3d 463 (Pa. 2014). Likewise, "the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations." *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010).

In reviewing an allegation of ineffective assistance of counsel, we begin with the assumption that counsel was effective. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). Our Supreme Court has stated that in order "[t]o merit relief based on an ineffectiveness claim under the PCRA, a petitioner must show that such ineffectiveness 'in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'"

Clause issues in our review of the case as they are part of the issues PCRA counsel lists as those Smithson wants our Court to review. *See Turner*/*Finley* Brief at 5-6.

*Commonwealth v. Collins*, 957 A.2d 237, 244 (Pa. 2008) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). This standard requires "a petitioner to prove that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice." *Id.* Regarding the second prong of the ineffective assistance of counsel test, this Court has stated the following:

> As a general rule, matters of trial strategy are left to the determination of counsel, and a defendant is not entitled to appellate relief simply because a chosen strategy is unsuccessful. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. … Accordingly, before a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect defendant's interests. Thus, counsel's assistance is deemed constitutionally effective once we are able to conclude the particular course chosen by counsel had some reasonable basis designated to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record.

*Commonwealth v. Buska*, 655 A.2d 576, 582-83 (Pa. Super. 1995) (quotations and citations omitted). Our Supreme Court has held that to

- 10 -

demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012). The failure by the petitioner "to satisfy any one of the three prongs of the test for ineffectiveness requires rejection of the claim." *Collins*, 957 A.2d at 244.

The first issue Smithson raises on appeal is that the PCRA court erred in not concluding "that [Trial Counsel] was ineffective for failing to conduct any serious investigation of Fen Bruce Covington ("Covington"), who was present at [Smithson]'s home when Shephard died." *Turner*/*Finley* Brief at 14. The PCRA court determined that this claim was without merit, finding that Trial Counsel "went over and above what a [trial counsel] is required to do when investigating and mounting a defense." PCRA Court Opinion, 3/25/14, at 27. We agree.

The certified record on appeal supports the trial court's determination. Our Supreme Court has held that "[c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Commonwealth v. Johnson*, 966 A.2d 523, 535 (Pa. 2009). Here, Trial Counsel's defense theory was that Covington was the actual perpetrator of Shephard's murder. *Turner*/*Finley* Brief at 14. The transcript of Trial Counsel's testimony at

Smithson's PCRA hearing reveals that he conducted a detailed and thorough investigation into Covington. Trial Counsel hired Donald Fredericks ("Fredericks"), a licensed private investigator, to assist him in finding out everything he could about Covington. N.T., 9/10/13, at 82-83. Fredericks investigated where Covington lived, where his wife and family lived and worked, his former affiliations with the Mormon Church, his possible ties to the homicide of an intern where he formerly worked, and his sexual activity. *Id.* at 82-84. Trial Counsel testified that both he and Fredericks staked out Covington's apartment. *Id.* at 83. Trial Counsel reported that he was able to prove that Covington had lied about not being at Smithson's home the night Shephard died. *Id.* at 88-90. Trial Counsel went so far as to state that "… I chased Covington harder than anybody I've chased … in my life." *Id.* at 85. Trial Counsel further testified that he investigated everything Smithson told him about Covington. *Id.* at 114. Based on Trial Counsel's testimony, we find no error with the PCRA court's determination that Trial Counsel conducted a reasonable investigation of Covington. Accordingly, the PCRA court correctly determined Smithson's first issue is without merit.

The second issue Smithson raises on appeal is that the PCRA court erred by failing to conclude that Trial Counsel was ineffective for not objecting to the Commonwealth's introduction of the Drug Scan Toxicology Report ("the Toxicology Report"). *Turner*/*Finley* Brief at 15. Smithson contends that Trial Counsel should have objected to permitting Dr. Richard

Cohn ("Dr. Cohn") to testify about the Toxicology Report instead of Dr. Mark Lichtenwalner ("Dr. Lichtenwalner"). *Id.* Dr. Lichtenwalner is the forensic toxicologist who actually performed the testing and Dr. Cohn is the Laboratory Director at Drug Scan, Inc., and Dr. Lichtenwalner's supervisor. N.T., 11/19/08, at 35, 37, 63. Smithson argues that Dr. Cohn's testimony violated his Sixth Amendment right to confront the witnesses against him under *Crawford v. Washington*, 541 U.S. 36 (2004). *Turner*/*Finley* Brief at 15.

In *Crawford*, the United States Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S.at 59. In 2009, the Supreme Court relied on *Crawford* in concluding that lab results admitted into evidence to prove an element of a crime are testimonial statements and thus subject to confrontation. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009). Our Court, applying *Melendez-Diaz*, held, in a driving under the influence case, that it was error for the trial court to admit BAC results without a showing that the lab technician was unavailable or that the defendant had an opportunity to cross-examine her. *Commonwealth v. Barton-Martin*, 5 A.3d 363, 369 (Pa. Super. 2010). Thus, Smithson argues that Trial Counsel was ineffective for not insisting that Dr. Lichtenwalner testify, as the failure to do so

precluded confrontation (i.e., cross-examination) of the forensic toxicologist who performed the testing for Shephard's toxicology report. **Turner**/**Finley** Brief at 15.

To the extent that Smithson's claim is of arguable merit, we conclude the PCRA court did not err in finding that allowing Dr. Cohn to testify to the Toxicology Report had no prejudicial effect on Smithson's case. The Toxicology Report revealed that Shephard had a lethal amount of Gamma Hydroxybutyrate ("GHB"), a date rape drug, in his system. N.T., 9/10/13, at 100. Trial Counsel testified that, based on his review of the evidence in the case and his discussions with Smithson, he had no reason to believe that the results of the Toxicology Report were inaccurate. **Id.** at 98-100. Thus, cross-examination of Dr. Lichtenwalner would not have mattered. **See id.** Trial Counsel testified to the following about his decision not to insist on Dr. Lichtenwalner's testimony:

> Q: How would have requiring Dr. [Lichtenwalner] to testify benefited your client?
>
> A: I don't know. It -- I was satisfied to have [Dr. Cohn] get the information in …
>
> Q: Okay.
>
> A: … because I knew what the information was. It wasn't going to be different if [Dr. Lichtenwalner] said it compared to [Dr. Cohn] saying it. [Dr. Cohn] actually was able to give me some very -- fortuitously, he was a guy who could give me the information I wanted

>            about this -- these drugs and what it means so
>            that part was helpful.

*Id.* at 103. Thus, the certified record reflects that Trial Counsel believed that it was irrelevant to Smithson's case whether Dr. Cohn or Dr. Lichtenwalner testified about the Toxicology Report. *Id.* Therefore, the record supports the conclusion that there was no reasonable probability that the result of the proceeding would have been different had Trial Counsel insisted on Dr. Lichtenwalner's testimony instead of allowing Dr. Cohn to testify. *See King*, 57 A.3d at 613. Accordingly, we find no error with the PCRA court's finding that allowing Dr. Cohn to testify to the Toxicology Report had no prejudicial effect on Smithson's case.

The third issue Smithson raises on appeal is that the PCRA court similarly erred by failing to conclude that Trial Counsel was ineffective for not objecting to the Commonwealth's introduction of the serology report through John Picciano ("Picciano") instead of Jennifer Badger ("Badger"). *Turner*/*Finley* Brief at 15-16. Picciano and Badger are forensic scientists with the Pennsylvania State Police and Badger was the individual who generated the serology report. N.T., 11/19/08, at 120, 125. Smithson argues that this too violated his Sixth Amendment right to confront the witnesses against him. *Turner*/*Finley* Brief at 16. Here, the PCRA court again found that allowing Picciano to testify to the serology report had no

prejudicial effect on Smithson's case. PCRA Court Opinion, 3/25/14, at 29-30. We agree.

As with the Toxicology Report, Trial Counsel testified that he already knew the contents of the serology report, that Smithson's DNA was found on gloves police recovered from Smithson's home that also contained Shephard's DNA, to be accurate. N.T., 9/10/13, at 104-05; N.T., 11/19/08, at 128-29. Trial Counsel testified as follows:

> Q: Was there any benefit to challenging the DNA or the blood evidence provided by the Commonwealth in terms of the methodology, the forensic analysis that was performed or the handling of the evidence?
>
> A: I had no expectation that anything was going to change in light of the facts as I knew them. Like I knew about the gloves. I knew what they were used for.
>
>            *     *     *
>
> Q: What did -- when you say you knew about the gloves, what do you mean?
>
> A: Whose DNA was on the gloves. They were gloves that I knew my client had worn at some point. So I knew his DNA was going to be found on the gloves.

N.T., 9/10/13, at 104-05. Thus, as with the Toxicology Report, the certified record supports the conclusion that there was no reasonable probability that the result of the proceeding would have been different had Badger testified to the serology report instead of Picciano. *See King*, 57 A.3d at 613.

Accordingly, we find no error with the PCRA court's finding that allowing Picciano to testify to the serology report had no prejudicial effect on Smithson's case.

The fourth issue Smithson raises on appeal is that the PCRA court erred by failing to find Trial Counsel ineffective for permitting Detective Joseph McCunney ("Detective McCunney") to read out-of-court statements made by Covington to the jury. *Turner*/*Finley* Brief at 16-18. Smithson argues that this also violated his Sixth Amendment right to confront the witnesses against him. *Id.* at 16.

We agree with the PCRA court that Trial Counsel had a reasonable strategy for allowing Detective McCunney to read Covington's out-of-court statements to the jury. As referenced above, Trial Counsel's defense theory was that Covington was the actual perpetrator of Shephard's murder. *See* N.T., 9/10/13, at 85-86. Trial Counsel testified that he had difficulty getting information about Covington before the jury because Covington exercised his Fifth Amendment privilege against self-incrimination and therefore did not testify. *Id.* at 90. Trial Counsel testified that he still needed a way to show the jury that Covington had lied about not being at Smithson's house the night of Shephard's murder. *See id.* at 88-90. Trial Counsel stated that the Commonwealth agreed to allow him to get this information before the jury through his cross-examination of Detective McCunney. *Id.* at 93-94. Trial Counsel reported that he believed that using Detective McCunney to get this

information before the jury benefitted the defense because Detective McCunney was such a trustworthy source. *Id.* at 95. Thus, here, Trial Counsel's decision to permit Detective McCunney to read the out-of-court statements had a reasonable strategic basis designed to effectuate his client's interests. *See Buska*, 655 A.2d at 582-83.

The fifth issue Smithson raises on appeal is that the PCRA court erred by failing to find that Trial Counsel was ineffective for allowing the Commonwealth to read Jennifer Smithson's ("Ms. Smithson") out-of-court statements into the record instead of having her testify. *Turner*/*Finley* Brief at 16-18. At trial, Trial Counsel and the Commonwealth entered into a stipulation to permit the Commonwealth to read into the record, in lieu of her actual testimony, Ms. Smithson's interview with police regarding a phone call that she had with Smithson shortly before police arrested him. N.T., 11/17/08, at 85-88. Smithson again argues that this violated his Sixth Amendment right to confront the witnesses against him. *Turner*/*Finley* Brief at 16-18. The PCRA court found that Trial Counsel had a sound strategic basis for allowing the Commonwealth to read Ms. Smithson's statements into the record. PCRA Court Opinion, 3/25/14, at 32-33. We agree.

Trial Counsel testified that the reason he entered into the stipulation was that he was concerned that Ms. Smithson would reveal damaging information about Smithson were she to testify as a witness. N.T., 9/10/13,

at 109-12. Ms. Smithson's out-of-court statements stem from a phone conversation that she had with Smithson shortly before his arrest wherein he admitted to hurting someone. N.T., 11/17/08, at 312-14. Trial Counsel stated he believed that the emotional nature of Ms. Smithson's statements would be more harmful to his client if she testified to them on the stand as a witness. N.T., 9/10/13, at 109-12. By keeping Ms. Smithson off the witness stand, Trial Counsel eliminated the possibility that she might, if she became emotional, reveal other damaging information about Smithson. *See id.* Furthermore, by reading the statements into the record, Trial Counsel believed he was limiting the emotional impact of the statements on the jury. *See id.* Thus, Trial Counsel's strategy had a reasonable basis designated to effectuate his client's interests. *See Buska*, 655 A.2d at 582-83. Accordingly, based on Trial Counsel's testimony, we conclude that the record supports the PCRA court's finding that Trial Counsel had a sound strategic basis for allowing the Commonwealth to read Ms. Smithson's out-of-court statements to the jury.

The final issue that Smithson raises on appeal is that the PCRA court erred by failing to find Trial Counsel ineffective for not cross-examining Daniel Hall ("Hall") "to show that his statements to the police were incorrect because of his excessive use of crystal meth at the time and shortly following [Shephard]'s homicide." *Turner*/*Finley* Brief at 18. Hall, Smithson's former paramour, testified at Smithson's trial that he discovered

Shephard's body in Smithson's home and that Smithson admitted to him that Shephard had been drugged with GHB.  N.T., 11/17/08, at 248, 251.

We conclude that the PCRA court did not err in finding that Trial Counsel had a reasonable strategic basis for not cross-examining Hall.  Trial Counsel believed that it would have been potentially damaging to Smithson's case had he attempted to discredit Hall's testimony.  N.T., 9/10/13, at 108.  Trial Counsel reported that Hall, based on his relationship with Smithson and his involvement in discovering Shephard's body, was distressed over the events surrounding Smithson's case.  *See id.* at 107-09.  In fact, Trial Counsel testified that he met with Hall about Smithson's case approximately thirty to fifty times and was concerned that if he impeached Hall's testimony, Hall might come "completely apart" on the witness stand and begin revealing potentially damaging information about Smithson.  *Id.* at 107-09.

For these reasons, we agree with PCRA Counsel that there are no non-frivolous issues that Smithson could pursue on appeal, and affirm the order dismissing his PCRA petition.

Order affirmed.  Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2014

- 20 -